**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARGARET W., individually and on behalf of J.W., and J.W.,<br><br>*Plaintiffs,*<br><br>v.<br><br>ASCENSION WISCONSIN, a Wisconsin corporation, AUTOMATED BENEFIT SERVICES, INC., a Michigan corporation, and the ASCENSION SMARTHEALTH MEDICAL PLAN,<br><br>*Defendants.* | No. 4:26-cv-44-MAL |

## MEMORANDUM AND ORDER

Before the Court is Defendants Ascension Wisconsin, Automated Benefit Services, Inc., and Ascension SmartHealth Medical Plan's (collectively "Ascension") motion to dismiss Plaintiffs Margaret W. and J.W.'s complaint for failure to state a claim. (Doc. 25). For the following reasons, the motion is **granted in part** and **denied in part**.

### Background[1]

As alleged in Plaintiffs' Complaint, Margaret W. was employed by Ascension Wisconsin. (Doc. ¶ 2–3). As an employee, she was eligible to participate in the Ascension SmartHealth Medical Plan (the "Plan"), a welfare plan governed by 29 U.S.C. § 1001 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶¶ 4, 6–7). J.W., Margaret W.'s dependent, was also an eligible

[1] The Court accepts "as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009).

beneficiary of the Plan. (*Id.* ¶ 6). Automated Benefits Services ("ABS") is a third-party administrator contracted by Ascension to provide administrative and claims processing services for the Plan. (*Id.* ¶ 5).

Because of suspensions from school, legal trouble, deficits in executive functioning, anger, verbal aggression, anxiety, sadness, and depression; J.W. was referred to Elements Wilderness Program ("Elements"), a licensed outdoor youth treatment facility (hereinafter referred to as an "outdoor youth program") in Utah. (*Id.* ¶¶ 14–15). J.W. was diagnosed with various mental health disorders (major depressive disorder, cannabis use disorder, nicotine use disorder, attention deficit hyperactivity disorder, and dyslexia) and received treatment for these disorders at Elements from October 12, 2022, through January 3, 2023, experiencing improvement as a result. (*Id.* ¶¶ 13, 16–17).

Margaret W. submitted claims seeking reimbursement from the Plan for costs associated with J.W.'s treatment at Elements, but those claims were denied without reference to any provision of the Plan to explain the denial. (*Id.* ¶¶ 25, 28–29). Instead, the denial referenced vague phrases such as "Missing or invalid information," "Diagnosis code," and "Procedure code for services rendered." (*Id.* ¶ 29).

After Margaret W. appealed, the explanation for the denial shifted to, "THIS IS NOT A COVERED EXPENSE UNDER THIS PLAN," (*id.* ¶¶ 30, 41), again without citing any provision of the Plan to explain why the claims were not a covered expense, and without addressing any of the points raised in Margaret W.'s appeal. (*Id.* ¶ 42).

Margaret W. then appealed to the Smart Health Appeals Committee. (*Id.* ¶ 43). This time, the claims were denied because, according to Ascension, an "Outdoor Youth Program is not listed as an accredited care facility for psychiatric services under [the Plan]." (*Id.* ¶ 56). The denial also included the Plan's definition of an Accredited Care Facility for psychiatric services. (*Id.*). Section 1.1 of the Plan defines Accredited Care Facility for psychiatric services as:

> [A] facility licensed, certified, or approved as a Psychiatric Treatment facility by the state or jurisdiction in which it is located, and which

> primarily provides psychiatric services for the diagnosis and treatment of mentally ill persons, by or under the supervision of a Physician.

(*Id.*; Doc. 27 at 138 (copy of the Plan provided by Plaintiffs in response to Ascension's motion to dismiss)); *see also* (Doc. 1 ¶ 24) (alleging that the same definition appears in the Summary Plan Description).

Margaret W. appealed again and was denied again with the same explanation. (Doc. 1 ¶¶ 61, 69). Plaintiffs then sued Ascension to recover benefits under ERISA, 29 U.S.C. § 132(a)(1)(B), and, alternatively, for equitable relief under the Mental Health Parity and Addiction Equity Act ("Parity Act"), 29 U.S.C. § 1132(a)(3). (*Id.* at 20–24). Ascension now moves to dismiss Plaintiffs' Complaint for failure to state a claim. (Doc. 25).

## Legal Standard

Ascension moves to dismiss Plaintiffs' Complaint for failure to state a claim. (Docs. 25, 26). In assessing Ascension's motion, the Court construes the Complaint in the light most favorable to Plaintiffs and determines whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678, "considering only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quotation and citations omitted).

## Analysis

### I. ERISA Benefits Claim

Ascension first moves to dismiss Plaintiffs' claim to recover benefits under ERISA (Count I). (Doc. 26 at 5–8). Under ERISA, a plan participant or beneficiary may bring a civil action to "recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B). "[W]hen someone makes a claim under an ERISA benefit

plan, they have the burden to show their claim is covered." *Beard v. Lincoln Nat'l Life Ins. Co.*, 175 F.4th 943, 948 (8th Cir. 2026).

Ascension argues that Plaintiffs' Complaint fails to carry that burden because it does not plausibly allege that J.W.'s treatment at Elements was covered under the Plan. (Doc. 26 at 5). According to Ascension, though Plaintiffs allege that the Plan covers psychiatric treatment at an "Accredited Care Facility," (Doc. 1 ¶¶ 18–24), their allegations show that Elements is not an "Accredited Care Facility" as defined by the Plan. (Doc. 26 at 5–8). The Court disagrees.

The Plan defines an "Accredited Care Facility" for psychiatric services as: "[A] facility licensed, certified, or approved as a Psychiatric Treatment facility by the state or jurisdiction in which it is located, and which primarily provides psychiatric services for the diagnosis and treatment of mentally ill persons, by or under the supervision of a Physician." (Doc. 1 ¶ 24); (Doc. 30-1 at 107).

"Psychiatric Treatment" is defined in turn as: "Treatment for any illness or condition, regardless of whether the cause is organic, that is classified as a Mental Disorder in the current edition of *International Statistical Classification of Diseases and Related Health Problems*, published by the U.S. Department of Health and Human Services, or is listed in the current edition of Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association." (Doc. 30-1 at 119).

Thus, as relevant here, an "Accredited Care Facility" for psychiatric services is simply a facility that: (1) is licensed as a treatment facility for mental disorders, and (2) primarily provides psychiatric services for mentally ill persons by or under the supervision of a physician.

Plaintiffs' allegations plausibly place Elements within that definition. First, Plaintiffs plausibly allege that Elements is licensed as a treatment facility for mental disorders. Plaintiffs allege that Elements was licensed in Utah as an outdoor youth treatment facility (Doc. 1 ¶ 14). Under Utah law, this is called an "outdoor youth program," but it necessarily provides services—such as "therapy" and "outdoor behavioral healthcare"—to a child that has "a chemical dependency" or "a dysfunction

or impairment that is emotional, psychological, developmental, physical, or behavioral." Utah Code § 62A-2-101(34) (Sept. 1, 2022). Chemical dependencies and emotional, psychological, developmental, physical, or behavioral dysfunction could all be considered mental disorders for which therapy is a common form of treatment. That so, Elements' licensure as a youth treatment facility under Utah law plausibly qualifies as licensure as a psychiatric treatment facility under the Plan.

Second, Plaintiffs' allegations give rise to the reasonable inference that Elements primarily provided psychiatric services for mentally ill children. Plaintiffs allege that J.W. was referred to Elements because of several markers of poor mental health such as "symptoms of anxiety, sadness, and depression" (Doc. 1 ¶ 15), and that J.W. received treatment for several diagnosed mental disorders at Elements "including major depressive disorder; cannabis use disorder; nicotine use disorder; attention deficit hyperactivity disorder; and dyslexia, under the criteria established in the Diagnostic and Statistical Manual of Mental Disorders, fifth edition." (*Id.* ¶¶ 16, 17). From those allegations, the Court could reasonably infer that J.W. was referred to Elements and received treatment from Elements because Elements primarily provides psychiatric services for children with mental health conditions.

Another reasonable inference from the Complaint is that J.W.'s treatment at Elements was provided either by or under the supervision of a physician as required by the Plan. Under the Plan, "Physician" is defined very broadly as "[a] medical practitioner who is licensed and legally qualified to prescribe and administer all drugs and to perform all Surgical procedures…***or*** a psychologist practicing in conformity with applicable laws, ***or*** any other licensed or certified practitioner of the healing arts in a category specifically favored under the health insurance laws in the state where the license or certification was issued, practicing within the terms of her license or certification." (Doc. 27 at 22). Utah law generally requires mental disorders be treated only by "physicians" (as defined by the Plan). *See* Utah Code § 58-60-103(1)(a)–(b) (permitting only individuals licensed under certain laws relating to nurses, psychologists, physicians, and physician assistants to practice mental health therapy and mental health counseling). So when Plaintiffs allege that

J.W. received treatment for diagnosed mental disorders at Elements, and that J.W. experienced improvements in these conditions as a result of that treatment, (*id.* ¶ 17), it is more than reasonable to assume the treatment was provided by or under the supervision of a "physician" as defined by the Plan.

Therefore, Plaintiffs' allegations plausibly show that Elements falls within the Plan's definition of an "Accredited Care Facility" for psychiatric services. The Court denies Ascension's motion to dismiss Plaintiffs' ERISA benefits claim (Count I).

**II. Parity Act Claim**

Ascension also moves to dismiss Plaintiffs' Parity Act claim (Count II). The Parity Act requires that any treatment limitations on "mental health or substance use disorder benefits" in an ERISA plan be "no more restrictive than the predominant treatment limitations applied to substantially all [covered] medical and surgical benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii)). Thus, to state a Parity Act violation, a plaintiff must show that the challenged plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than comparable medical or surgical benefits. *T.E. v. Anthem Blue Cross & Blue Shield*, 165 F.4th 971, 987 (6th Cir. 2026) (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)); *Midthun-Hensen ex rel. K.H. v. Grp. Health Coop. of S. Cent. Wis., Inc.*, 110 F.4th 984, 987 (7th Cir. 2024) (citing the same).

There are three types of Parity Act cases: "(1) ***facial exclusion*** cases, (2) ***as-applied cases,*** and (3) ***internal process*** cases." *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 971 (9th Cir. 2024). Opposing Ascension's motion to dismiss, Plaintiffs argue that they have plausibly alleged a facial-exclusion Parity Act claim (Doc. 30 at 10–11), and, alternatively, that it is premature to dismiss their as-applied claim at this stage of the litigation, (*id.* at 12–13). The Court disagrees.

Plaintiffs' facial claim appears to be based on the Complaint's general allegation that "[t]he Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner Defendants excluded coverage of treatment for J.W. at Elements." (Doc. 1 ¶ 104). While this allegation recites broad types of

limitations that could give rise to a Parity Act violation, *see* 29 C.F.R. § 2590.712(c)(4)(ii) (listing "[n]onquantitative treatment limitations"), it fails to ***show*** that the Plan actually imposes such a limitation here. That is not enough to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' ") (quoting Fed. R. Civ. P. 8(a)(2)). In this case, the Complaint does not explain how the Plan limits mental health treatment, such as by geographic location, facility type, or provider specialty. Nowhere does the Complaint point to any specific treatment limitation for mental health or substance use disorders that is not equally applicable to medical and surgical treatment under the Plan. Thus, this threadbare allegation, without more, is insufficient to show that the Plan facially violates the Parity Act. *See Iqbal*, 556 U.S. at 678.

Plaintiffs' argument with respect to their as-applied claim fairs no better. Plaintiffs' as-applied claim is based on these allegations:

- "Upon information and belief, Defendants have not applied a similar exclusion in the context of skilled nursing facilities or other analogs to Elements." (Doc. 1 ¶ 105).
- "Defendants are aware that it [sic] is enforcing an exclusion that is only applicable to mental health conditions/benefits." (*Id.*).
- "Upon information and belief, Defendants' denial of coverage also violated the [Parity Act] in application or effect." (*Id.* ¶ 106).

There are no facts in the Complaint supporting these conclusory allegations. What two exclusions is the Court supposed to be comparing? It is not even clear what "exclusion" these allegations are referencing. Such threadbare recitals fail to show an as-applied violation of the Parity Act. *See Iqbal*, 556 U.S. at 678.

In opposition, Plaintiffs present two arguments. First, they argue that Ascension's failure to provide requested "analysis and other documents to assist them in performing their own evaluation of [Ascension's] compliance with the [Parity Act]" "supports an inference that Ascension has not applied a comparable nomenclature

requirement to medical/surgical benefits generally[.]" (Doc. 30 at 12). This argument does not save Plaintiffs' as-applied claim. The nomenclature requirement that Plaintiffs reference is not alleged in the Complaint. And to state a claim for relief, it is the Complaint's "factual content" that must give rise to "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 578.

Second, Plaintiffs argue that it is premature to dismiss their as-applied claim because the information supporting the claim is solely within Ascension's possession. (Doc. 30 at 12–13). True, "allegations pled on information and belief," like those here, "are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023). But "[w]ithout some factual basis for the inference of liability or the reasonable belief that the information supporting such liability is in the sole possession of the defendant, pleadings made on information and belief cannot cure an otherwise threadbare complaint." *Id.* at 955.

Here, Plaintiffs provide no factual basis for believing that some unspecified exclusion was applied to their coverage claim that is not applied to comparable medical and surgical benefits claims. And without saying what specific exclusion they think was disparately applied to their claim, it is impossible for the Court to determine whether it is reasonable to believe that the information supporting that allegation is in the sole possession of Ascension. In short, pleading on information and belief does not excuse a plaintiff from their obligation to allege what specific treatment limitation they believe was disparately applied to their claim in violation of the Parity Act.

Thus, the Court dismisses both Plaintiffs' facial and as-applied Parity Act claims.

## III. Ascension Wisconsin

Ascension finally argues that all claims against Ascension Wisconsin fail as a matter of law because Ascension Wisconsin is not a proper defendant under ERISA. (Doc. 26 at 10–12). The Court agrees.

In an action to recover benefits under ERISA § 502(a)(1)(B), "[t]he proper party defendant . . . is the party that controls administration of the plan." *Layes v. Mead Corp.,* 132 F.3d 1246, 1249 (8th Cir. 1998). Based on the allegations in the Complaint, it is unclear that Ascension Wisconsin meets this standard. The Complaint identifies Ascension Wisconsin only as Plaintiff Margaret W.'s employer. (Doc. 1 ¶ 6). It does not allege that Ascension Wisconsin controls the administration of the plan.

## Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Ascencion's motion to dismiss (Doc. 25) is **GRANTED in part and DENIED in part** as follows:

(1) The Court **dismisses** the Parity Act claim (Count II).

(2) The Court **dismisses** Ascension Wisconsin as a defendant in this matter.

(3) The Court **denies** Ascension's motion in all other respects.

**SO ORDERED,**

This 25th day of August, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE